IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SABRINA A. BLUNDELL and | § | |
| ALICIA K. MORGAN, On Behalf of | § | |
| Themselves and All Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 3:17-cv-1990 |
| | § | |
| HOME QUALITY CARE HOME | § | |
| HEALTH CARE, INC., d/b/a | § | CLASS AND COLLECTIVE ACTION |
| BETHANY HOME HEALTH SERVICES; | § | |
| BRADLEY P. LASSITER; and | § | |
| WYNDALL S. LANDERS, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT – CLASS ACTION

---

Plaintiffs, SABRINA A. BLUNDELL ("Blundell") and ALICIA K. MORGAN ("Morgan") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Original Complaint against Defendants, HOME QUALITY CARE HOME HEALTH CARE, INC., d/b/a BETHANY HOME HEALTH SERVICES ("Bethany"), BRADLEY P. LASSITER ("Lassiter") and WYNDALL S. LANDERS ("Landers") (collectively "Defendants"), showing in support as follows:

### I.     NATURE OF CLAIMS

1.     This is a collective action filed under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendants' failure to pay Plaintiffs and the putative collective action members: (a) time and one-half their respective regular rates of pay for all hours worked over 40 during each

seven day workweek for the time period they were employed by Defendants within the maximum limitations period allowed by the FLSA, and (b) all minimum wages owed and/or liquidated damages owed relative to failure to timely pay all minimum wages owed.

2.     Plaintiffs, on behalf of themselves and all others similarly situated, seek to recover unpaid overtime wages, unpaid minimum wages, liquidated damages, post-judgement interest, attorneys' fees, costs, and any and all other damages allowed under the FLSA.

3.     Plaintiffs, on behalf of themselves and the putative class members seek recovery of all damages available for straight time wages earned, but not paid, by Bethany pursuant to Texas state law claims for *quantum meruit* and money had and money received.

## II.   COVERAGE UNDER THE FLSA

A.     <u>**Enterprise Coverage**</u>

4.     At all times relevant to this lawsuit, Bethany is and has been an "enterprise engaged in commerce" as defined by the FLSA. 29 U.S.C. § 203(s)(1)(A).

5.     At all times relevant to this lawsuit, Bethany has employed two or more employees.

6.     At all times relevant to this lawsuit, Bethany has employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

7.     For example, Bethany employed two or more employees who in engaged in commerce. Examples include commerce on the interstate highways, conducting transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet. Additionally, Bethany employed two or more employees who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were

moved in and/or produced for commerce. Examples of such goods and/or materials include vehicles, fuel, computers, computer software, phones and/or cell phones, and other supplies/materials used in connection with Bethany's business operations.

8.      On information and belief, at all times relevant to this lawsuit, Bethany has had annual gross volume of sales made or business done in excess of $500,000.

**B.      Individual Coverage**

9.      Plaintiffs are also protected under the "individual" prong of the FLSA.  29 U.S.C. § 206(a) & 29 U.S.C. § 207(a)(1). Plaintiffs were  individually engaged in commerce relative to their primary job duties in furtherance of Defendants' business operations.  For example and in connection with their primary job duties for Defendants' business operations, Plaintiffs regularly and routinely traveled on interstate highways and regularly and routinely used interstate communications. Individual coverage is also appropriate because Bethany receives significant revenue for their services through Medicare. *See  Alvarez v. Amb-Trans, Inc.*, 2012 WL 4103876 (W.D. Texas September 17, 2012). Bethany accepts Medicare and Medicaid as payment for its services. Bethany is a "licensed Medicare and Medicaid Agency by the State of Texas."

### III.      JURISDICTION AND VENUE

10.      Plaintiffs' claims arise under the FLSA. Accordingly, this Court has subject matter  jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because  the Defendants and the Plaintiff(s) transacted business within this judicial district and division and a  substantial part of the events or omissions giving rise to this Complaint occurred in this district and division.

## IV.    THE PARTIES

12.    Plaintiffs incorporate the preceding sections by reference as if set forth fully herein.

### A.    Plaintiff  Sabrina A. Blundell

13.    Blundell, a former employee of Defendants, was personally involved in interstate commerce during her employment with the Defendants, and is represented by the undersigned. By filing this Complaint, Blundell consents to be a party to this FLSA collective action lawsuit pursuant to 29 U.S.C. § 216(b).  Additionally, Blundell's Notice of Consent to Join is attached as Exhibit A.

### B.    Plaintiff  Alicia K. Morgan

14.    Morgan, a former employee of Defendants, was personally involved in interstate commerce during her employment with the Defendants, and is represented by the undersigned. By filing this Complaint, Morgan consents to be a party to this FLSA collective action lawsuit pursuant to 29 U.S.C. § 216(b).  Additionally, Morgan's Notice of Consent to Join is attached as Exhibit B.

### C.    Defendant  Home Quality Care Home Health Care, Inc., d/b/a Bethany Home Health Services

15.    Bethany provides  healthcare services for patients in their own home setting.

16.    Bethany is an employer as that term is  defined  by  the  FLSA  and  operates multiple  locations throughout the State  of  Texas and is subject to the provisions of the FLSA with respect to Plaintiffs and the putative collective action members.

17.    Bethany's principal place of business, as listed with the Texas Secretary of State, is 5000 Legacy Drive., Suite  360, Plano, Texas 75024.

18.     Bethany may be served with process by serving its registered agent, Bradley Lassiter at 5000 Legacy Drive., Suite 360, Plano, Texas 75024.

**D.     Defendant Bradley P. Lassiter**

19.     Defendant Bradley P. Lassiter is a natural person and resident of the State of Texas.

20.     At all times relevant, Mr. Lassiter is and has been an owner, the Chief Executive Officer and Registered Agent for Bethany.

21.     At all times relevant to this lawsuit, Mr. Lassiter is/was an employer of Plaintiffs and the putative collective action members pursuant to the FLSA.

22.     At all times relevant, Mr. Lassiter has exercised operational control over the business operations of Bethany.

23.     Mr. Lassiter had the power to hire and fire employees of Bethany.

24.     Mr. Lassiter controlled the work schedules of employees of Bethany.

25.     Mr. Lassiter controlled the conditions of employment for employees of Bethany.

26.     Mr. Lassiter determined the rates and/or methods of payment for employees of Bethany.

27.     Mr. Lassiter maintained control over the employment records of Bethany employees.

28.     Mr. Lassiter may be served with summons in this lawsuit at 5000 Legacy Drive., Suite 360, Plano, Texas 75024.

**E.     Defendant Wyndall S. Landers**

29.     Defendant Wyndall S. Landers is a natural person and resident of the State of Texas.

30.     At all times relevant, Mr. Landers is and has been an owner, officer and operational manager for Bethany.

31.     At all times relevant to this lawsuit, Mr. Landers is/was an employer of Plaintiffs and the putative collective action members pursuant to the FLSA.

32.     At all times relevant, Mr. Landers has exercised operational control over the business operations of Bethany.

33.     Mr. Landers had the power to hire and fire employees of Bethany.

34.     Mr. Landers controlled the work schedules of employees of Bethany.

35.     Mr. Landers controlled the conditions of employment for employees of Bethany.

36.     Mr. Landers determined the rates and/or methods of payment for employees of Bethany.

37.     Mr. Landers maintained control over the employment records of Bethany employees.

38.     Mr. Landers may be served with summons in this lawsuit at 3312 Laurel Fork Drive, McKinney, TX 75070-4821.

## V.   FACTUAL BACKGROUND

39.     Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

40.     Plaintiff Blundell resides in Delta County, Texas. Blundell was employed by Defendants as an office staff member in support of Defendants' home health business operations. Blundell's duties  related to the provision of services for home healthcare patients and included, but were not limited to, the receipt and documentation of home healthcare referral patients, the scheduling of home healthcare appointments, and the performance of data entry

tasks related thereto. Blundell primarily worked for Defendants in Greenville,  Hunt County, Texas.

41.     Plaintiff Morgan resides in Rains County, Texas. Morgan was employed by Defendants as a traveling licensed vocational nurse or home health assistant.  Morgan's duties included but were not limited to assisting home health patients with the taking of medication and the monitoring of certain vital signs. Morgan primarily worked for Defendants in Greenville, Hunt County, Texas.

42.     Bethany is one of the largest home health agencies in Texas. Acting through its network of satellite locations throughout the state, Bethany provides home health services to individuals experiencing short and long term medical conditions. Services provided include nursing care, therapy, bathing, grooming, meal preparation and housekeeping.  In providing these services, Bethany employs a number of personnel including an office staff, licensed vocational nurses, certified nursing assistants, home health aides and therapy assistants.

43.     After the initial  patient assessments are conducted, the vast majority of the care is performed by Bethany's  non-professional staff members including licensed vocational nurses, certified nursing assistants, home health aides and therapy assistants. Defendants also employ office staff who serve in non-professional roles in connection with those services.

44.     The licensed vocational nurses, certified nursing assistants, home health aides and therapy assistants are referred to collectively as the "Home Health Assistants." The office staff who support the work of the Home Health Assistants are referred to collectively as "Office Staff."

45.     Plaintiff Morgan and the other Home Health Assistants regularly and customarily worked in excess of 40 (forty) hours per workweek. Defendants, however, failed to compensate them at a rate of time and one-half their respective regular rates of pay for all hours worked over 40 during each and every seven day workweek during the time period relevant to this lawsuit (three years preceding the date this lawsuit was filed and forward). Defendants failed to make and keep an accurate record of all hours worked by Morgan and the Home Health Assistants during each workday and each seven day workweek as required by the FLSA.

46.     At all times relevant to the Complaint, Defendants knew of, had reason to know of, approved of, and benefited from Morgan's and the other Home Health Assistants' regular and overtime work, paid and unpaid.

47.     Plaintiff Blundell and the other Office Staff regularly and customarily worked in excess of 40 (forty) hours per workweek. Defendants, however, failed to compensate them at a rate of time and one-half their respective regular rates of pay for all hours worked over 40 during each and every seven day workweek during the time period relevant to this lawsuit (three years preceding the date this lawsuit was filed and forward). Defendants failed to make and keep an accurate record of all hours worked by Blundell and the Office Staff during each workday and each seven day workweek as required by the FLSA.

48.     In approximately December 2016, Bethany ceased paying Blundell and other Office Staff and Morgan and other Home Health Assistants for the work they respectively performed for Bethany. During the time period of approximately December 15, 2016 to January 15, 2017, Blundell and other Office Staff and Morgan and other Home Health Assistants (a) performed work performed for Bethany, (b) expected to be paid for that work by Bethany, but (c)

were either not paid any wages by Bethany for the work performed in workweeks that time period or were paid straight time for that work long after the scheduled pay date. When paid late, Defendants did not pay Plaintiffs and the putative collective action members FLSA mandated liquidated damages in an amount equal to minimum wages that were not timely paid.

49.     At all times relevant to the Complaint, Defendants knew of, had reason to know of, approved of, and benefited from Blundell's and the other Office Staff's straight time and overtime work, paid and unpaid.

50.     At all times relevant to the Complaint, Defendants knew of, had reason to know of, approved of, and benefited from Morgan's and the other Home Health Assistant's straight time and overtime work, paid and unpaid.

51.     Defendants knew or showed reckless disregard for whether their actions violated the FLSA. For example, Defendants knew and/or had reason to believe that Blundell and the Office Staff and Morgan and the Home Health Assistants regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all such hours worked over 40 during each and every workweek. Furthermore, Defendants knew that Blundell and the Office Staff and Morgan and the Home Health Assistants were not paid any wages for certain weeks worked, and were paid well beyond the scheduled pay date for certain weeks worked without being paid corresponding FLSA mandated minimum wage liquidated damages.

## VI.    CONTROLLING LEGAL RULES

**A.    <u>FLSA</u>**

52.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

53.    The FLSA generally requires that an employer employing an employee pay that employee at a rate of not less than $7.25 per hour worked. 29 U.S.C. § 206(a)(1)(C).

54.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

55.    The FLSA provides that individual officers and managers of a corporate employer can have joint and several liability, along with the corporate entity, for an employee's FLSA damages. *See, e.g., Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012); *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012); *Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 284 (5th Cir. 2016), *as revised* (Jan. 6, 2016).

56.    "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

57.    Federal law requires employers to make and keep accurate and detailed payroll data for certain employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a). Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, total

hours worked each workday, total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2(a). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

58.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

59.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

60.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216(b). Failing to pay at least $7.25 per hour worked in a workweek is a violation of the FLSA. *Id.*

61.     "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

62.     "The Court…shall, in addition to any judgment awarded to the [prevailing] plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

63.     The FLSA provides for a two year statute of limitations for violations of the statute. 29 U.S.C. § 255(a). However, that time period may be extended to three years if

Defendant's conduct was in willful violation of the law. *Id. See also*, *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

64.     The FLSA makes it "unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted and proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

65.     "Any employer who violates [29 U.S.C. § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [29 U.S.C. § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). "[T]he FLSA's broad authorization of 'legal and equitable relief' encompasses compensation for emotional injuries suffered by an employee on account of employer retaliation." *Pineda v. JTCH Apartments, L.L.C.*, No. 15-10932, 2016 WL 7367799, at *3 (5th Cir. Dec. 19, 2016).

**B.      Texas State Law Wage Theft Claims**

66.     *Quantum meruit* is an equitable remedy based on the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). To recover under *quantum meruit*, it must be established that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Sanders v. Total Heat & Air, Inc.*, 248

S.W.3d 907, 917 (Tex. App. Dallas 2008) (citing *Vortt,* 787 S.W.2d at 944; *Bashfara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

67.      "Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App. Fort Worth 2012, no pet. h.) (*citing Staats v. Miller*, 243 S.W.2d 686, 687 (1951); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) (stating that cause of action for money had and received belongs conceptually to doctrine of unjust enrichment)). To succeed in a claim for money had and received, it must be shown that the defendant holds money or its equivalent that, in equity and good conscience, belongs to the plaintiff. *Best Buy v. Barrera,* 248 S.W.3d 160, 162-163 (Tex. 2007) (per curiam); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.,* 358 S.W.3d 808, 813 (Tex. App.--Dallas 2012, no pet. h.). The cause of action for money had and received is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which … belongs to the plaintiff." *H.E.B.,* 369 S.W.3d at 507.

## VII.    PLAINTIFFS' INDIVIDUAL CLAIMS

### A.      <u>FLSA Minimum Wage and Overtime Wage Claims</u>

68.      Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

69.      All conditions precedent to this suit, if any, have been fulfilled.

70.      At all relevant times, Bethany was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

71.     At all relevant times, Mr. Lassiter was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

72.     At all relevant times, Mr. Landers was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

73.     At all relevant times, Bethany is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

74.     At times relevant, Blundell was an employee of Bethany pursuant to the FLSA. 29 U.S.C. § 203(e).

75.     At times relevant, Blundell was an employee of Mr. Landers pursuant to the FLSA. 29 U.S.C. § 203(e).

76.     At times relevant, Morgan was an employee of Bethany pursuant to the FLSA. 29 U.S.C. § 203(e).

77.     At times relevant, Morgan was an employee of Mr. Lassiter pursuant to the FLSA. 29 U.S.C. § 203(e).

78.     At times relevant, Morgan was an employee of Mr. Landers pursuant to the FLSA. 29 U.S.C. § 203(e).

79.     Bethany, Mr. Lassiter and Mr. Landers are/were joint employers of Plaintiffs and the putative collective actions members described herein. *Gray*, 673 F.3d at 355; *Martin*, 688 F.3d at 251; *Hernandez*, 628 F. App'x at 284. Bethany, Mr. Lassiter and Mr. Landers are jointly and severally liable for the claims and damages sought by Plaintiffs and the putative collective action members in this lawsuit.

80.     At times relevant, Blundell regularly worked in excess of 40 hours per seven-day workweek as an employee of Defendants.

81.     At times relevant, Morgan regularly work/worked in excess of 40 hours per seven-day workweek as an employee of Defendants.

82.     Defendants are and were required to pay Blundell and Morgan time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period relevant to this lawsuit. 29 U.S.C. § 207(a)(1).

83.     Defendants violated the FLSA because they did not pay Blundell and Morgan time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period relevant to this lawsuit. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 216(b).

84.     Defendants are and were required to pay Blundell and Morgan at a rate of no less than $7.25 per hour worked each workweek. 29 U.S.C. § 206(a)(1)(C). However, Defendants did not pay those Blundell and Morgan at least $7.25 per hour worked for certain weeks they performed work for Defendants which is a violation of the FLSA. 29 U.S.C. § 216(b). Furthermore, for workweeks in which Defendants did not timely paid all remuneration owed, but instead paid same after the scheduled pay date, Defendants failed to pay Blundell and Morgan FLSA mandated minimum wage liquidated damages in violation of the FLSA. 29 U.S.C. § 216(b).

85.     Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). For example, Defendants knew and/or had reason to believe that Blundell and the Office Staff and Morgan and the Home Health Assistants regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all such hours worked over 40 during each and every workweek. Furthermore, Defendants knew that Blundell, Morgan, and the FLSA minimum wage putative collective action members were

not paid any wages for certain weeks worked, and were paid well past the scheduled pay date for certain weeks worked without being paid corresponding FLSA mandated minimum wage liquidated damages.

86.     Plaintiffs and the putative collective action members seek all damages available for Bethany's, Mr. Lassiter's and/or Mr. Landers' failure to timely pay all minimum wages, overtime wages, and/or liquidated damages owed.

**B.**      **Texas State Law Wage Theft Claim**

87.     Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

88.     Blundell and Morgan are former employees of Bethany.

89.     Blundell and Morgan performed valuable work for Bethany for which they were not paid any corresponding wages by Bethany. Bethany accepted, used, and enjoyed that valuable work that was performed by Blundell and Morgan. Blundell and Morgan performed that work for Bethany with the expectation that Bethany would pay them. As Blundell and Morgan were employees of Bethany performing work for Bethany, Bethany knew and had notice that Blundell and Morgan should have been paid for that work, and that they expected to be paid in exchange for performing that work. *Sanders*, 248 S.W.3d at 917; *Vortt,* 787 S.W.2d at 944; *Bashfara*, 685 S.W.2d at 310.

90.     Furthermore, by failing to pay Blundell and Morgan straight time wages for work they respectively performed for the benefit, value, and enjoyment of Bethany, Bethany is in the possession of money that, in equity and good conscience, belongs to Blundell and Morgan. *Best Buy,* 248 S.W.3d at 162-163; *MGA Ins. Co.,* 358 S.W.3d at 813; *H.E.B., L.L.C.*, 369 S.W.3d at 507.

91.     Blundell and Morgan seek recovery of all straight time wages and related damages owed by Bethany for weeks they worked but were never paid corresponding straight time wages owed pursuant to Texas law on *quantum merui*t and/or money had and money received (the "Texas State Law Wage Theft Claims").

## VIII.   FLSA COLLECTIVE ACTION ALLEGATIONS

**A.      Office Staff Collective Action Overtime Claims**

92.     Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

93.     The Office Staff putative collective action members employed by Defendants during the relevant time period are/have been subjected to Defendants' practices and/or policies that violated the FLSA in substantially similar fashion as Blundell. Defendants are/were joint employers of the Office Staff putative collective action members. The Defendants employ(ed) numerous Office Staff at and/or in connection with its business operations in the State of Texas. Bethany's marketing material admits that Bethany serves patients in 120 counties throughout the state of Texas.

94.     Like Blundell, the Office Staff putative collective action members regularly work/worked in excess of 40 hours per seven day workweek for Defendants, but are not/were not paid time and one-half their respective regular rates of pay for all such hours worked over 40 in each and every workweek in the time period relevant to this lawsuit.

95.     The Office Staff putative collective action members perform/performed work that is/was substantially similar to that performed by Blundell and experience(d) substantially similar FLSA violations as experienced by Blundell. The Office Staff putative collective action members are/were paid pursuant to the same method as Blundell. Bethany utilizes a similar staffing policy at each of its locations throughout the state of Texas.

Accordingly, the Office Staff current and/or former employees  affected by the Defendants' unlawful practices and/or policies made the subject matter of the FLSA overtime claims in this lawsuit are similarly situated to Blundell, and to each other, for purposes of collective action certification.

**B.**     **Home Health Assistant Collective Action Overtime Claims**

96.     Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

97.     Home Health Assistants employed by Defendants during the relevant time period are/have been subjected to Defendants' practices and/or policies that violated the FLSA in substantially similar fashion as Plaintiff Morgan. Defendants are/were joint employers of the Home Health Assistant putative collective action members. The Defendants employ(ed) numerous Home Health Assistants at and/or in connection with their business operations in the State of Texas.  Bethany's marketing material admits that Bethany serves patients in 120 counties throughout the state of Texas.

98.     Like Morgan, the Home Health Staff putative collective action members regularly work/worked in excess of 40 hours per seven day workweek for Defendants, but are not/were not paid time and one-half their respective regular rates of pay for all such hours worked over 40 in each and every workweek in the time period relevant to this lawsuit.

99.     The Home Health Assistant putative collective action members perform(ed) work that is/was similar to that performed by Morgan and experience(d) substantially similar FLSA violations as experienced by Morgan. The Home Health Assistant putative collective action members are/were paid pursuant to the same method as Morgan. Bethany utilizes a similar Home Health Assistant staffing policy at each of its locations throughout the state of Texas. Accordingly, the Home Health Assistant current and former employees  affected by the

Defendants' unlawful practices and/or policies made the subject matter of the FLSA overtime wage claims in this lawsuit are similarly situated to Morgan, and to each other, for purposes of collective action certification for FLSA overtime wage violations.

**C.       FLSA Minimum Wage Collective Action Claims**

100.    Plaintiffs reassert and incorporate by reference the above-numbered paragraphs.

101.    Blundell, Morgan, and the FLSA minimum wage putative collective action members were subjected to Defendants' practices and/or policies that violated the FLSA's minimum wage provisions in substantially similar fashion. Namely, Defendants did not pay those current and/or former employees at least $7.25 per hour for certain weeks they performed work for Defendants. Furthermore, for workweeks in which Defendants did not timely paid all remuneration owed, but instead paid same after the scheduled pay date, Defendants failed to pay those current and/or former employees FLSA mandated minimum wage liquidated damages.

102.    Blundell, Morgan, and the FLSA minimum wage putative collective action members all experienced the same and/or substantially similar minimum wage violations due to Defendants' failure to pay any wages owed for certain workweeks worked, and failure to pay FLSA mandated minimum wage liquidated damages for pay that was not timely received by those current and/or former employees. Accordingly, Blundell, Morgan, and the FLSA minimum wage putative collective action members are all similarly situated to each other for purposes of collective action certification for FLSA minimum wage violations.

## IX.     CLASS ACTION ALLEGATIONS

**A.       Texas State Law Wage Theft Claim Class Allegations**

103.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

104.    Blundell, Morgan, and the State Law Wage Theft Claim class members are all current and/or former employees of Blundell.

105.    The State Law Wage Theft Claim class members experienced the same Wage Theft by Bethany as described by Blundell and Morgan above.

106.    Under Texas Law, Blundell, Morgan, and the State Law Wage Theft Class Members seek recovery of all straight time wages and related damages owed by Bethany for the Texas State Law Wage Theft Claims pursuant to Texas state law causes of action for *quantum meruit* and/or money had and money received.

107.    Blundell and Morgan bring this Texas State Law Wage Theft Claim action on behalf of themselves and the State Law Wage Theft Claim class members. Blundell and Morgan seeks to represent a class initially defined as: "all employees who (a) worked for Bethany during the time period of approximately December 15, 2016 to January 15, 2017; (b) expected to be paid for that work performed for Bethany which Bethany accepted; and (c) were not paid any wages by Bethany for the workweeks worked in that time period." Blundell and Morgan request the opportunity to expand, narrow, or modify the State Law Wage Theft class member definition, including sub-classes, pursuant to a motion for class certification and/or amended complaint.

108.    Blundell's and Morgan's State Law Wage Theft Class Claim satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a class action. On information and belief, over 100 other current and/or former employees of Bethany provided office staff and/or home health assistance that are and/or were victims of the Texas State Law Wage Theft Claims. As such, joinder is impracticable. The precise number of class members and their addresses are readily determinable from the records of Bethany.

109.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from the Texas State Law Wage Theft Claim include, but are not limited to, the following:

a.    Whether Blundell, Morgan and the State Law Wage Theft class members were not paid any wages owed relative to workweeks in which they performed work for Bethany as employees of Bethany;

b.    Whether Blundell, Morgan, and the State Law Wage Theft class members are entitled to recovery of unpaid straight wages and other damages from Bethany pursuant to Texas state law claims premised on *quantum meruit* and/or money had and money received; and

c.    The appropriate method to calculate damages owed to Blundell, Morgan, and the State Law Wage Theft class members by Bethany for violations of state law in connection with the Texas State Law Wage Theft Claims.

110.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the Texas State Law Wage Theft Claims.

111.    A class action is the superior method for the fair and efficient adjudication of this controversy. Bethany acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Bethany, and/or substantially impair or impede the ability of class members to protect their interests.

112.    Blundell and Morgan are victims of the Texas State Law Wage Theft Claims and are therefore members of the Texas State Law Wage Theft Class. Blundell and Morgan are

committed to pursuing this action and have retained counsel with extensive experience in prosecuting complex litigation. Accordingly, Blundell and Morgan are adequate representatives of the class and have the same interests as all of its members. Furthermore, Blundell's and Morgan's claims are typical of the claims of all members of the class, and Blundell and Morgan will fairly and adequately protect the interests of the absent members of the class. Blundell, Morgan, and their counsel do not have claims or interests that are adverse to the class members.

113. Blundell and Morgan reserve the right to establish sub-classes and/or modify class notice language as appropriate in any class action certification motion or other proceeding.

114. Blundell and Morgan further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## X.    JURY DEMAND

115. Plaintiffs demand a jury on all issues to be tried in this matter and herein.

## XI.    DAMAGES AND PRAYER

116. Plaintiffs ask that the Court issue a summons for Defendants to appear and answer, and that Plaintiffs and the collective action and class action members be awarded a judgment against Bethany, Lassiter and/or Landers for the following:

   a. Certification of Blundell's and the putative Office Staff Collective Action Members' FLSA Overtime Wage Claims as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

   b. Certification of Morgan's and the putative Home Health Assistant Collective Action Members' FLSA Overtime Wage Claims as a collective action with

the requirement of notice of this lawsuit being provided to the putative collective action members;

c.  Certification of Blundell's, Morgan's, and the putative FLSA Minimum Wage Claim Collection Action Members FLSA minimum wage and/or liquidated damages claims as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

d.  Actual damages in the amount of unpaid overtime wages for Blundell and the Office Staff Collective Action Members and/or Morgan and the Home Health Assistant Collective Action Members;

e.  Liquidated damages in an equal amount to unpaid overtime wages for Blundell and the Office Staff Collective Action Members and/or Morgan and the Home Health Assistant Collective Action Members;

f.  Actual damages in the amount of unpaid minimum wages for Blundell, Morgan, and the FLSA Minimum Wage Collective Action Members;

g.  Liquidated damages in an equal amount to unpaid minimum wages for Blundell, Morgan, and the FLSA Minimum Wage Collective Action Members;

h.  Liquidated damages for Blundell, Morgan, and the FLSA Minimum Wage Collective Action Members in an equal amount to the minimum wages that were not timely paid by Bethany;

i.  Post-judgment interest on any and all FLSA damages;

j.  Costs under the FLSA;

k.  Reasonable attorney's/attorneys' fees under the FLSA;

l.  Certification of Blundell's and Morgan's Texas State Law Wage Theft Claims as a Rule 23 class action naming Blundell and Morgan as the class representatives and the undersigned as class counsel;

m.  All available damages to Blundell, Morgan, and the Texas State Law Wage Theft Claim class members for the Texas State Law Wage Theft Claims including pre- and post-judgment interest; and

n.  All other relief to which Plaintiff(s) and the putative collective action members and/or putative class action members are justly entitled.

Date: July 27, 2017.

Respectfully submitted,

By:  _s/Ben K. DuBose_____
Ben K. DuBose
Texas Bar No. 00796488
bdubose@duboselawfirm.com
Greg W. Lisemby
Texas Bar No. 24036973
glisemby@duboselawfirm.com
DuBose Law Firm, PLLC
4310 North Central Expressway
Dallas, Texas 75206
Tel. (214) 389-8199
Fax (214) 389-8399

Allen R. Vaught
TX Bar No. 24004966
MS Bar No. 101695
avaught@baronbudd.com
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
Tel. (214) 521-3605
Fax (214) 520-1181

ATTORNEYS FOR PLAINTIFFS